**IN THE CHANCERY COURT OF SHELBY COUNTY, TENNESSEE
FOR THE THIRTIETH JUDICIAL DISTRICT, AT MEMPHIS**

| | |
|---|---|
| DAVID JOHNSON, PATRICK LYNCH, ROBERTO VERTHELYI and FREDERICK SHEARIN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>W2007Grace Acquisition I, Inc., Todd P. Giannoble, Gregory Fay, Brian Nordahl, Daniel E. Smith, Mark Ricketts, The Goldman Sachs Group, Inc., Goldman Sachs Realty Management L.P., Whitehall Parallel Global Real Estate Limited Partnership 2007,W2007 Finance Sub, LLC, W2007 Grace I, and PDF Holdings LLC,<br><br>Defendants. | Docket No. ____________<br><br>**CLASS ACTION** |

## AMENDED COMPLAINT

Plaintiffs David Johnson, Patrick Lynch, Roberto Verthelyiand Frederick Shearin(collectively, "Plaintiffs"),by and through their undersigned attorneys, submit this class action complaint against defendants named herein.

The allegations below are based upon personal knowledge as to Plaintiffs and their own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation of counsel, which included a review of United States Securities and Exchange Commission ("SEC") public filings and comment letters, reports, industry analysts' reports, news articles, court documents and W2007Grace Acquisitions I, Inc.'s press releases and



EXHIBIT
tabbies
C

materials provided by W2007Grace Acquisitions I, Inc. in response to the Books and Records demand made on August 2, 2013.

## INTRODUCTION

1. This is a class action for damages and equitable relief brought by Plaintiffs on behalf of themselves and a class (the "Class," as defined herein) of all current and former holders of W2007 Grace 8.75% Series B Cumulative Preferred Stock (OTC: WGCBP) ("Series B Preferred Stock") and Grace 9.00% Series C Cumulative Preferred Stock (OTC: WGCCP) ("Series C Preferred Stock"). The Series B Preferred Stock and Series C Preferred Stock are collectively referred to herein as "W2007 Grace Preferred Stock" or "Preferred Stock." W2007 Grace Acquisitions I, Inc. (the "Company" or "W2007 Grace") is a private Dallas-based hotel real estate firm incorporated in Tennessee and controlled, owned and dominated by The Goldman Sachs Group Inc. ("Goldman Sachs") and certain of its affiliates.

2. At one time, W2007 Grace was a well-capitalized, profitable, dividend paying, publicly-traded company known as Equity Inns, Inc. ("ENN"). By all key metrics, the holders of ENN's preferred stock held a safe investment.

3. In 2007, Goldman Sachs, through its affiliates, took the Company private in a highly leveraged merger transaction. Instead of redeeming the ENN preferred stockholders for $146 million, as set forth by the Charter, ENN preferred stockholders were required to exchange their preferred stock in a one-to-one exchange of W2007 Grace Series B and Series C Preferred Stock.

4. In September 2007, after the unfair merger transaction was announced, the ENN preferred stockholders (who later were converted into the W2007 Grace Preferred Stockholders) initiated a class action against the former directors of ENN in the Circuit Court of Shelby

County, Tennessee, titled: *Donald J. Roberts IRA v. McNeill, et al.*, CT-004955-07 (Stokes, J. presiding). While this matter involves different defendants and post-merger conduct, many of the class members in the ENN action will overlap with class members in this action.

5. After ENN was placed into the hands of Goldman Sachs and its affiliates,the once public company went completely dark and the treatment of the Preferred Stockholders suddenly and dramatically changed for the worse.

6. Goldman Sachs and its affiliates began engaging in a classic oppression scenario whereby they sought to deny Preferred Stockholders any return or benefits to their investment in order to compel Preferred Stockholders to relinquish their stock at an inadequate price. Effectively, Goldman Sachs and its affiliates put into action a two-part scheme to oppress and then squeeze-out the Preferred Stockholders for as little consideration as possible.

7. Immediately following the merger, Goldman Sachs and its affiliates engaged in a whole host of continuous oppressive misconduct, including:

- suppressing the secondary market in the Preferred Stock by refusing to release information to the public that was and is necessary for a fair and orderly secondary market;
- suppressing the marketability of the Preferred Stock by refusing to make them eligible for electronic transfer at the Depository Trust Company (the "DTC");
- causing the Company to cease paying regular dividends to the Preferred Stockholders;
- entering into self-dealing loan agreements that allowed Goldman Sachs to collect huge deal fees and enter into covenants that ensured that all of the Company's net income went to Goldman Sachs accounts;
- restructuring the assets and property interests so that the Preferred Stockholders held stock in a Company that owned a far smaller property interestin ENN's hotels;
- concealing the true value and property interest of the Company; and

- failing to assist the Preferred Stockholders to appoint two director-nominees to serve as the Preferred Stockholders' representatives as provided by the Charter.

8. Thereafter, beginning in 2012, after years of oppression, PDF Holdings LLC ("PDF"), an affiliate of Goldman Sachs, began secretly purchasing the Preferred Stock in a series of creeping tender offers. The value of the Preferred Stock ranged between approximately $1 and $9 per share. Without any forewarning, the Company made a startling announcement on September 17, 2012 that "a sister company of the Company had acquired approximately 35% of the aggregate amount of issued and outstanding Series B and C preferred shares of the Company." The Company failed to disclose the name of this "sister company" or any other details about the recent acquisitions.

9. Thereafter, on August 13, 2013, the Company announced that this same sister company, finally identified by the Company as PDF, had amassed another "24.3% of the aggregate amount of issued and outstanding Series B and C preferred shares of the Company" purportedly bringing its total ownership interest to 58.8% of the outstanding Preferred Stock.

10. According to the August 13th Press Release, "PDF has also informed the Company of its intention to consider a tender offer for the remaining preferred shares of the Company later in 2013."

11. The purchases made by PDF were insider transactions that took place on an un-level playing field in that the Company never informed investors of Defendants' intent to buy out the Preferred Stockholders. Investors were in the dark about PDF's intent to acquire a significant stake in the Preferred Stock and of its close affiliation with the Company and Goldman Sachs.

12. However, even without the requisite disclosures governing tender offers, the situation was clear-- Defendants were seeking to eliminate over $200 million in obligations to the Preferred Stockholders for a fraction of this obligation. Defendants timing also could not be

better for Goldman Sachs as the entire hotel and hospitality industry is doing well with earnings and revenues on the rise.

13. By keeping the entire Class of Preferred Stockholders in the dark, Defendants positionedthemselves to eliminate their $200 million plus obligation to the Preferred Stockholders for a nominal amount, while keeping for themselves free, unencumbered reign over the profitable hotel assets acquired in the ENN Merger.

14. As a result of their misconduct, the Board, the Majority Shareholders and the Goldman Sachs Defendants caused the Company to breach its contractual obligations set forth in the Charter, or in the alternative caused the Company to breach its duty of good faith and fair dealing implied into the terms of the Charter.

15. Moreover, by their actions to oppress and squeeze out the Preferred Stockholders, the Company's Board and its Majority Shareholders (at the direction of the Goldman Sachs Defendants) also breached their fiduciary obligations of good faith, fair dealing, loyalty and candor owed to the Preferred Stockholders.

16. Plaintiffs, on behalf of the Class, seek an award of compensatory damages for such contractual and fiduciary breaches to Plaintiffs and the other members of the Class and/or equitable relief with respect to such breaches.

**JURISDICTION AND VENUE**

17. This Court has jurisdiction over this action pursuant to Tennessee Code § 16-10-101-*et seq.* This Court has jurisdiction over each of the defendants because at all relevant times they conducted business in, resided in, and/or were citizens of, Tennessee. Additionally, this action is not removable under 28 USC § 1441(b) and is excluded from the Class Action Fairness Act, 28 USC § 1453(d)(1)-(3).

18. Venue is proper in this county pursuant to Tennessee Code § 20-4-101- *et seq.*, in that the actions complained of arose in and had an effect in this County.

## THE PARTIES

A. The Plaintiffs

19. Plaintiff David Johnson ("Johnson"), a citizen of South Carolina, holds W2007 Grace Series B Preferred Stock both directly and through a retirement account and trust account. He has been a holder of Series B Preferred Stock since April 22, 2005 and has held Series B Preferred Stock at all relevant times herein. Pursuant to the Amended and Restated Charter of W2007 Grace Acquisition I, Inc. (the "Charter"), Plaintiff Johnson and all other current holders of Preferred Stock are entitled to contractually specified cumulative dividends in *arrears* from the Company and redemption of their shares at a price of $25 per share. Plaintiff Johnson also sold Preferred Stock in 2010 which may have coincided with the purchases made by PDF Holdings LLC. Moreover, on August 2, 2013, Plaintiff Johnson made a books and records demand on the Company under Tenn. Code Ann. § 48-26-102 (2013)(the "Books and Records Demand").

20. Plaintiff Roberto Verthelyi ("Verthelyi"), a citizen of New Jersey, purchased 200 shares of W2007 Grace Series B Preferred Stock in 2007 and sold his entire position in 2012. Plaintiff Verthelyi sold his Preferred Stock at or around the same time Defendants were secretly using PDF Holdings LLC to buy a controlling interest in the Preferred Stock with material insider information that was not disclosed to Plaintiff Verthelyi.

21. Plaintiff Patrick Lynch ("Lynch"), a citizen of Washington, purchased 1,000 shares of ENN Series B Preferred Stock in 2007, which pursuant to the Merger were converted into W2007 Grace Series B Preferred. Lynch sold his entire position in 2012in the Preferred

Stock at or around the same time Defendants were secretly using PDF Holdings LLC to buy a majority interest in the Preferred Stock with material insider information that was not disclosed to Plaintiff Lynch.

22. Plaintiff Frederick Shearin("Shearin") is a citizen of Tennessee and owns and has owned shares of W2007 Grace Series C Preferred Stock through his retirement accountthe relevant time period.

23. Johnson, Verthelyi, Lynch and Shearin are collectively referred to herein as the "Plaintiffs".

B. The Company and its Board

24. Defendant W2007 Grace Acquisition I, Inc. ("W2007 Grace" or the "Company"), is incorporated in the State of Tennessee and its principal place of business is located at 6011 Connection Drive, Irving, Texas 75039.W2007 Grace's registered agent in Tennessee is National Registered Agents, Inc. located at 1900 Church Street, Suite 400, Nashville, Tennessee 37203. The Company is and has always been under the control of The Goldman Sachs Group, Inc. ("Goldman Sachs").

25. Defendant Todd P. Giannoble ("Giannoble") is the President of the Company and at all relevant times has served as a director on the Board of the Company. At all relevant times herein, Giannoble has also served as the President of Archon Hospitality, L.P. and Vice President of the Archon Group L.P., two entities owned and controlled by Goldman Sachs. Giannoblealso served as Vice President of Goldman Sachs from 2000 through 2004. Upon information and belief, Giannoble currently resides in Texas.

26. Defendant Gregory M. Fay ("Fay") is the Vice President and Treasurer of the Company. At all relevant times herein, Fay has also served on the Board of Directors of the

Company and also served as the Chief Financial Officer of the Archon Group L.P., a company owned and controlled by Goldman Sachs. Upon information and belief, Fay currently resides in Texas.

27. Defendant Brian T. Nordahl ("Nordhal") is Vice President of the Company and at all relevant times herein served on the Board of Directors of the Company. Nordahlis also the Senior Vice President of Acquisitions at Archon Hospitality, L.P., a company owned and controlled by Goldman Sachs. Upon information and belief, Nordhalcurrently resides in Texas.

28. Defendant Daniel E. Smith ("Smith") is the Vice President and Secretary of the Company. At all relevant times herein, Smith served on the Company's Board of Directors. Smith is also the Vice President, Associate General Counsel and Director of Dispositions and Repositionings at Goldman Sachs. Upon information and belief, Smith currently resides in Texas.

29. Defendant Mark A. Ricketts ("Ricketts") is the Vice President of the Company and at all relevant times herein served on the Company's Board of Directors. Ricketts is also a Senior Vice President at Archon Hospitality L.P., a company owned and controlled by Goldman Saachs. Upon information and belief, Ricketts currently resides in Texas.

30. Defendant directors Nordahl, Fay, Giannoble, Smith, and Ricketts are collectively referred to herein as the "Board." By virtue of their positions as officers and directors of the Company, they owed fiduciary duties of due care, goodfaith, fair dealing, candor and loyalty to the Preferred Stockholders.

C. Majority Shareholders

31. Defendant W2007 Grace I, LLC ("Grace I") is a Tennessee Limited Liability Company formed on June 19, 2007 and is 100% owned by Whitehall and controlled by Goldman Sachs. Grace I is located at 85 Broad Street New York, New York 10004-2456.

32. Defendant Whitehall Parallel Global Real Estate Limited Partnership 2007 is a Delaware limited partnership ("Whitehall Parallel") located at 85 Broad StreetNew York, New York 10004-2456.

33. Defendant W2007 Finance Sub, LLC ("Finance Sub") is a Delaware limited liabilitycompany with an office at 6011 Connection Dr., Irving, TX 75039-2607.

34. Whitehall Parallel and Finance Sub own 100% of Grace I and 100% of the Company's common stock through Grace I.

35. Whitehall Parallel, Finance Sub and Grace I arecollectively referred to herein as "Whitehall" or "Majority Shareholders."By reason of their status as Majority Shareholders, they owed fiduciary duties of due care, goodfaith, fair dealing, candor and loyalty to the Preferred Stockholders.

36. Defendant PDF Holdings LLC ("PDF" or "Majority Preferred Stockholder") is an affiliate of Whitehall and also affiliated with and controlled by Goldman Sachs.PDF owns a 58.8% interest in the Preferred Stock. By reason of its status as a Majority Preferred Stockholder, PDF owed fiduciary duties of care, good faith, fair dealing, candor and loyalty to the Preferred Stockholders.

37. Whitehall Parallel, Finance Sub, Grace I and PDF are controlled by and affiliated with Goldman Sachs.

D. Goldman Sachs Control Persons

38. Defendant The Goldman Sachs Group, Inc. ("Goldman Sachs") is incorporated in New York and has its principal executive offices at 200 West Street in New York, New York. Goldman Sachs effectively controls the Company and its Board, and the Majority Shareholders.

39. Defendant Goldman Sachs Realty Management L.P. (also known as, Archon Group, L.P. and Archon Hospitality) ("Goldman Sachs Realty") is a limited partnership organized in the State of Delaware. Its principal address is located at 6011 Connection Drive, Irving, Texas 75039. Each of the directors and officers of W2007 Grace are executives of Goldman Sachs Realty, which is owned and/or affiliated with and controlled by Goldman Sachs.

40. Defendants Goldman Sachs and Goldman Sachs Realty are collectively referred to herein as the "Goldman Sachs Defendants."

E. Non-Parties

41. W2007 Equity Inns Partnership L.P. ("W2007 Equity L.P." or "Operating Partnership") is a Tennessee limited partnership and its principal place of business is located at 7700 Wolf River Boulevard, Germantown, Tennessee 38138. W2007 Equity LP owns the hotel properties that originally belonged to Equity Inns, Inc. and were acquired by Goldman Sachs affiliates pursuant to the Merger consummated on October 25, 2007.

42. W2007 Equity Inns Gen-Par LLC ("Gen-Par") is the general partner of W2007 Equity L.P., according to the Amendment to the Certificate of Limited Partnership filed with the State of Tennessee on October 26, 2007. Thereafter, on January 13, 2011, Defendant Fay submitted an Amendment to the Certificate of Limited Partnership clarifying that the Company was also a general partner of the Operating Partnership, along with Gen-Par, and then signed the certificate amendment on behalf of both companies.

43. Goldman Sachs Mortgage Co. ("GSMC") is incorporated in New York and has its principal executive offices at 200 West Street in New York, New York.

## FACTUAL BACKGROUND

### A. GOLDMAN SACHS, THROUGH ITS AFFILIATES, PURCHASESENNAND TAKES IT PRIVATE

44. Goldman Sachs, through its affiliates, purchased Equity Inns, Inc. ("ENN"), a publicly-traded company in a going-private merger transaction that was announced on June 21, 2007 and consummated on October 25, 2007 (the "Merger").

45. Prior to the Merger, ENN was the third largest publicly-traded hotel real estate investment trust ("REIT") with over $1.4 billion in reported assets and profitable. ENN securities traded on the New York Stock Exchange ("NYSE") and were widely regarded as safe investments.

46. ENN acquired various hotel properties through the issue of two series of preferred stock sold from 2003 to 2006, raising approximately $146 million. The first series comprised the 8.75% Series B Cumulative Preferred Stock of which 3.45 million shares sold. The second series offered was the 9.00% Series C Cumulative Preferred Stock of which 2.4 million shares sold. The ENN Series B and Series C Preferred Stock are collectively referred to herein as the "ENN Preferred Stock."

47. ENN declared regular quarterly dividends to holders of ENN Preferred Stock in every quarter prior to the Merger. The average trading price of the ENN Preferred Stock in the months leading up to the Merger was approximately $22 per share. Investors in ENN Series B and Series C Preferred Stock had limited rights to a fixed-interest cumulative dividend and a liquidation preference of $25 per share, which had priority over the Company's common stockholders.

48. The vehicle used by Goldman Sachs for this Merger was W2007 Grace and certain of its affiliates. A Goldman Sachs fund, Whitehall Street Global Real Estate Limited Partnership 2007 ("Whitehall Street"), purchased 100% of W2007 Grace's common stock, which is now owned by the Majority Shareholders Whitehall, through its wholly-owned subsidiary Grace I.

49. Pursuant to the terms of the Merger, Goldman Sachs, through its affiliates, agreed to purchase all of the ENN common stock and assume ENN's debt, but refused to redeem ENN's Series B and Series C Preferred Stock.

50. Instead of redeeming the ENN Preferred Stock at $25 per share, which ultimately would have cost Goldman Sachs an additional $146 million in capital to consummate the Merger, Goldman Sachs exchanged each ENN Series B Preferred Stock for a W2007 Grace Series B Preferred Stock and each ENN Series C Preferred Stock for a W2007 Grace Series C Preferred Stock.

51. Pursuant to the terms of the Merger, the newly issued W2007 Grace Series B and Series C Preferred Stock, with very limited exception, were to be identical in terms of rights and interests to its ENN Preferred Stock counterparts. Specifically, the Merger Agreement provided that the holders of W2007 Grace Preferred Stock would be granted "identical dividend and other relative rights, preferences, limitations and restrictions" as those of the ENN Preferred Stocks.

52. Following the merger, the rights, interests and treatment of the Preferred Stockholders substantially changed and for the worse.

## II. DEFENDANTS' SCHEME TO OPPRESS AND SQUEEZE-OUT THE PREFERRED STOCKHOLDERS

53. Goldman Sachs, the Board and the Majority Shareholders knew that the Company had outstanding 3.45 million shares of Series B and 2.4 million shares of Series C Preferred Stock, which were all held by outside individual investors and retirees.

54. Goldman Sachs, the Board and the Majority Shareholders also knew that the Preferred Stockholders could not be put off in perpetuity because eventually Goldman Sachs and the Majority Shareholders would want to monetize their investment in ENNand rid themselves of the obligations to the Preferred Stockholders.

55. While these Defendants needed to retire the Company's Preferred Stock obligations, they were unwilling to do so for a fair price or at the cost of redemption ($25 per share for a total of $146,250,000) plus all dividends owed (which as of December 31, 2012 amounted to $10.33 per share for a total of $60,431,000). Thus, as of December 31, 2012, the Company would have been obligated to pay Preferred Stockholders $35.33 per share, or a total of $206,680,500 to redeem the Preferred Stock.

56. Unwilling to redeem the Preferred Stock, Defendants engaged in a continuous plan to oppress and disenfranchise the Preferred Stockholders, which all culminated in the eventually squeeze-out of the Preferred Stockholders at an unfair price.

### A. Phase One: Defendants Oppress And Freeze-Out The Preferred Stockholders

57. Once Goldman Sachs took control of the Company and handpicked its own officers to serve as directors of the Company and appointed investment adviser Goldman Realty, it commenced the first phase of its plan to squeeze-out the Preferred Stockholder through oppressive misconduct aimed at harming their interests.

### 1. The Company Goes Dark On Investors In An Attempt To Suppress The Secondary Market And Conceal Defendants' Wrongdoing

58. As soon as the Preferred Stock was delisted from the NYSE and deregistered, the Company stopped virtually all communications with Preferred Stockholders. In essence, once the Company went private, it went dark.

59. The Company, at the control and direction of the Board and Goldman Sachs Defendants, stymied the circulation of basic investor information about the Company and its finances. For example, items such as the financials of the Company were made available but only in a limited and highly restrictive manner.

60. The only information made public included: (1) the Bylaws of Grace Acquisition I, Inc.; (2) W2007 Grace's Amended and Restated Charter, dated January 24, 2008, and (3) quarterly press releases routinely stating that the Board decided not to declare dividends.

61. None of the Company's financials were publicly available.Instead, to obtain a copy of the financials, Defendants required holders of Preferred Stock or interested investors to submit a written request to the Company by mail. All requests for financials had to be accompanied by a signed confidentiality agreement that purportedly prohibited the sharing or use of the information. The Company also charged investors a "per page" copy fee for the information requested.

62. As set forth on the Company website:

> The Company has elected to make certain Company materials andinformation available to the holders of Grace Preferred Stock. Interested holders of Grace Preferred Stock must complete, sign and mail to the Company a request form which is available on the Company's website (www.equityinns.com). Such holders will be required to confirm their status as a holder of Grace Preferred Stock, acknowledge their understanding that the materials provided

> must be kept confidential, and pay the reasonable cost of copying and shipping the materials.

*See* W2007 Grace Website, Frequently Asked Questions at 4, *available at* http://www.equityinns.com ["W2007 Grace FAQ"]. Even after investors adhered to this cumbersome process, the Company in some cases disclosednon-current financial information, unreasonably delayed responding and "misplaced" requests.

63. By prohibiting the dissemination of basic investor information to the market and obscuring the financial data available, Defendants sought to, and succeeded in, depressing the prices of the Series B and Series C Preferred Stock, keeping the prices well below their redemption value, below the purported value of the Preferred Stock at the time of the Merger, and even below the amount of dividends owed per share.

64. Indeed, the value of the Series B and C Preferred Stock, which Defendants themselves valued at $17.50 and $17.00 per share, respectively, at the time of the Merger dropped to pennies per share.

65. In addition to devaluing the Preferred Stock, Defendants suppressed any chance of a secondary market for the Preferred Stock with the Series B and Series C Preferred Stock which traded infrequently and sporadically over the counter ("Other OTC") under tickers WGCBP and WGCCP, respectively.

66. The Company's lack of transparency is now the subject of a battle between Defendants and the Preferred Stockholders before the Securities & Exchange Commission ("SEC"). In early 2013, a Preferred Stockholder demanded that the Company commence reporting under the Securities & Exchange Act of 1934, as there were more than 300 investors in the Preferred Stock.

67. On April 4, 2013, W2007 Grace, through its counsel Sullivan & Cromwell LLP, filed a formal written request to the SEC seeking an exemption from federal reporting requirements. Without the exemption, the Company would be legally required to make full and accurate disclosures or run the risk of liability under federal securities laws and regulatory scrutiny. This would mark the end of Defendants' oppressive disclosure policy and carefree self-dealing.

68. Defendants could not risk opening its books to public and regulatory scrutiny and, therefore, caused the Company to request an exemption from the SEC without alerting Preferred Stockholders.

69. The SEC immediately publicized the Company's exemption request and solicited comments from investors. Upon learning of the Company's request, investors were outraged and filed numerous letters requesting that the SEC deny the request. *See* http://www.sec.gov/comments/81-939/81-939.shtml.

**2. Defendants Restructure The Assets And Alienate The <u>Property Interests of the Preferred Stockholders</u>**

70. Once the Company went dark, Defendants were able to engage in conduct that harmed and alienated the rights and interests of the Preferred Stockholders.

71. As set forth in the June 21, 2007 merger announcement, which was reviewed and authorized by the Goldman Sachs, the Company's Series B and Series C Preferred Stock were to be converted into shares of preferred stock of the acquiring entity which was supposed to "have identical dividend and other relative rights, preferences, limitations and restrictions as are provided in the [ENN] Company's Series B and Series C Preferred stock."

72. The ENN Preferred Stockholders were supposed to receive a one-to-one exchange of preferred stock in a successor companyW2007 Grace which held identical property rights and

interests.Whitehall (through its subsidiary Grace I) was supposed to own 100% of the Company's common stock, which under the Charter, was subordinated to the interests of the newly created W2007 Grace Preferred Stockholders.

73. The financials of the Company (formerly ENN) for the period ending December 31, 2007 set forth that the total assets on a consolidated basis with the Operating Partnership were valued at $2,541,856,661. By year-end 2009, the Company's assets were valued at $1,978,152,141, and by year-end 2012, they were valued at $1,630,362,000. The financials set forth that the Company "is the general partner of W2007 Equity Inns Limited partnership, L.P. [the Operating Partnership] and has control over its management and major operating decisions...." Thus, by all appearances, the Preferred Stockholders owned an interest in a Company, which like ENN, owned the assets and income stream of the Operating Partnership that owned the ENN hotels.

74. However, in 2013, it was revealed that following the Merger, the Company and its Board, under the control of the Goldman Sachs Defendants, changed the ownership structure of the Operating Partnership that was anticipated at the time of the Merger so that the Preferred Stock,which was once fully backed by billions in hotel assets, was now backed by an entity whose ownership interest in the ENNhotel assets had shrunk to a mere single-digit interest.

75. According to the financials obtained through the Books and Records Demand, Grace I holds a 1% general partnership interest and a 98% limited partnership interest in the Operating Partnership.In addition, Gen-Par, an entity controlled by Goldman Sachs, claimed in a filing made to the Tennessee's Secretary of State that it was the sole general partner of the Operating Partnership, and then later an amendment was filed purporting to clarify that the

Company was also a 1% general partner. The identity of Gen-Par and the nature of its relationship with the Operating Partnership were never disclosed to the Preferred Stockholders.

76. It was not until the Company's private letter sent to the SEC, dated April 4, 2013, that the Company's advisor Sullivan & Cromwell LLP,[1]which is counsel to Goldman Sachs and Goldman Sachs Realty, that the Company disclosed that the Company's ownership interest in the Operating Partnership (and, thus, the income stream from the ENN hotels) represented a "low single digit percentage interests in the 130 hotels."

77. Thus, W2007 Grace's representation to the SEC in its April 4, 2013 letter, stating that W2007 Grace is a mere real estate holding company with no operations other than its single digit interest in the Operating Partnership,was directly at odds with its statements in the financials that W2007 Grace has "control over" the Operating Partnership's "management" and makes all the "major operating decisions."

78. Based on this new information, it appears that at some point following the Merger, Goldman Sachs, the Company's Board and the Majority Shareholders restructured the Operating Partnershipto give the Majority Shareholders the lion's share of ownership interests in the Operating Partnership and, with it, virtually the entire income stream from the ENN hotels, along with 100% of the Company's common stock.

79. Upon information and belief, Goldman Sachs, Goldman Sachs Realty and the Majority Shareholders caused the Company's Board to alienate the rights and interests of the Preferred Stockholders who were supposed to have the same rights and interests as ENN Preferred Stockholders and priority over that of the Majority Shareholders.

---

[1] In addition to serving as the advisor to the Goldman Sachs Defendants in the Merger transaction, Sullivan & Cromwell has been a long-time legal advisor to Goldman Sachs, with their offices strategically situated across the street from one another in New York City.

80. By its conduct in restructuring the ownership interest of the Operating Partnership, Defendants harmed the value of the Preferred Stock and did an end-run around the priority rights and liquidation preference of the Preferred Stockholders in the ENN hotel assets.

81. This restructure was the result of improper self-dealing by the Company's Board and Majority Shareholder with the goal of furthering the interests of Goldman Sachs to the detriment of the rights and property interests of the Preferred Stockholders.

82. Because the Company consolidated its financials with that of the Operating Partnership, this new ownership structure and the self-dealing itself was concealed from the Preferred Stockholders, which had no knowledge of the fact that the Company no longer owned the rights to the income stream from the ENNhotel assets.

83. The Board and Majority Shareholders never informed the Preferred Stockholders of any changesto their interests or the structure of the Operating Partnership following the Merger, leaving Preferred Stockholders in the dark and with a markedly different understanding of their investment.

84. In reaction to the Company's April 4, 2013 letter to the SEC, Plaintiff Johnson sought to determine the exact ownership structure and income stream of the Company on a non-consolidated basis, but the Company steadfastly refused to produce the partnership agreements or other relevant information in response to his Books and Records Demand.

85. The Company's refusal to provide basic information can only be interpreted as an attempt by the Company to conceal Defendants' self-dealingand the alienation of the Preferred Stockholders property rights and interests.

### 3. W2007 Grace Stops Paying Dividends to the Preferred Stockholders

86. In addition to going dark and alienating the property rights and interests of the Preferred Stockholders, the Board engaged in a frontal attack on Preferred Stockholders by ceasing the payment of dividends.

87. The Company'sCharter provides that the Grace Preferred Stockholders "shall be entitled to receive, when and as declared by the Board of Directors, out of funds of the corporation legally available for payment cash dividends at the rate of 8.75% [on the Series B and 8% on the Series C] per annum of the $25 liquidation preference right to a dividend . . . and shall be paid quarterly on or before the last day of January, April, July and October of each year." *See* Charter at 2 &8.

88. ENN regularly paid dividends to the Preferred Stockholders in every quarter prior to the Merger. However, almost immediately following the Merger, Defendants ceased paying dividends to the Preferred Stockholders and, as of December 31, 2012, owed Preferred Stockholders $60,431,000 individends.

89. On June 30, 2008, the Board decided by unanimous written consent to stop paying dividends to Preferred Stockholders on the basis of loan agreements made with entities owned and controlled by Goldman Sachs, stating:

> [P]ursuant to the terms if the Mortgage Loan Agreement by and among W2007 Equity Inns Realty, LLC and W2007 Equity Inns Realty, LP, as borrower and Goldman Sachs Mortgage Company, as lender, dated as of October 25, 2007, as amended by that certain First Omnibus Amendment to Loan Documents, dated February 11, 2008, and that certain Second Omnibus Amendment to Loan Documents, dated as of April 2, 2008 (the "Loan Agreement"), a Trigger Period (as defined in the Loan Agreement) is in effect and continuing; and

> WHEREAS, during a Trigger Period, the Loan Agreement restricts the release of funds from the Low Debt Yield reserve Account (as defined in the Loan Agreement) to pay stock dividends for the shares of Series B Preferred Stock and Series C Preferred Stock;
>
> NOW, THEREFORE, BE IT RESOLVED, that, in lights of the foregoing, the Board hereby determines not to declare a second quarter 2008 dividend with respect to the Series B Preferred Stock and the Series C Preferred Stock.

90. Thereafter, in a press release, dated September 17, 2012, W2007 Grace claimed for the first time that the Board stopped paying dividends on the basis of the loan covenants *and other factors*; onceagain,offering no explanation as to what those other factors were. The Company stated:

> [I]n October 2007, affiliates of the Company (the "Subsidiary Borrowers") entered into a new loan agreement, which was amended in February 2008, April 2008 and December 2010. The documentation for this loan contains certain covenants restricting the use of the Subsidiary Borrowers' cash, which impacts the Company's ability to make certain cash distributions, including cash distributions by the Company to holders of the Company's common stock or to the holders of Grace Preferred Stock. Commencing with the second quarter of 2008 through the second quarter of 2013, the Company's board of directors determined that, ***in light of these covenants and other factors***, it was in the Company's best interest to not declare and pay dividends. Decisions regarding future dividends will be made on a quarter-by quarter basis, as determined by the Company's board of directors.

*See* W2007 Grace FAQ at 2 (emphasis added).

91. The Company's Board has not declared a dividend since June 2008 on the "basis of certain covenants contained in the loan documentation put in place in October 2007." However, the Company has refused to make the loan documentation available to the Preferred Stockholders and has failed to disclose the covenants that purportedly underlie the Board's decision. In his Books and Records Demand, Plaintiff Johnson sought additional information

about the loan covenants underlying the Board's decision to stop paying dividends. However, once again, the Company has steadfastly refused to produce the loan documentation.

92. Instead, the Company produced to Plaintiff Johnson Board meeting minutes which set forth, without elaboration, that "in light of the current impact of the existing Equity Inn's loan documentation on its use of cash, the Company will not declare [a dividend]."Such vague assertions coupled with the Company's refusal to produce the loan documents evidences the Board'sbad faith in stopping the payment of dividends.

93. After the Merger, W2007 Grace's Board, in their capacity as Goldman Sachs officers, continued managing the multi-billion dollar ENNhotel property portfolio and paying interest to GSMC. Yet, this was not enough for Goldman Sachs. The Board caused Company affiliates to enter into loan covenantswith GSMCthat provided for certain additional debt cushions, including a debt yield test (the parameters of which are unknown) and a cash trap (the terms of which are unknown) and granted a Goldman Sachs affiliate an option to purchase up to 97% of the ENN assets.

94. Pursuant to these loan covenants and the option, Defendants have been able to extract for Goldman Sachs and its affiliates the entire positive net worth of the Company and the Operating Partnership in lieu of paying dividends to the Preferred Stockholders. Goldman Sachs, which controlled the Company and GSMC, and the Board stood on both sides of the undisclosed loan agreements,have reaped, and will continue to reap, enormous benefits from the Operating Partnership (including the higher interest rate, debt yield tests and cash-trap), while Preferred Stockholders receive nothing in return.

95. Goldman Sachs and the Majority Shareholders have taken every dollar of incomegenerated by the ENN hotel properties and froze out the Preferred Stockholders from any

dividends or benefitsto owning an investment in what is essentially a closely-held private entity with virtually no secondary market. Barring Defendants' self-dealing, the Company would have possessed sufficient surplus or earnings to pay the Preferred Stockholders a dividend.

96. The Board and the Majority Shareholders (at the direction and aid of the Goldman Sachs Defendants) breached their fiduciary duties of loyalty, good faith and fair dealing to Preferred Stockholdersby withholding dividends and denying the Preferred Stockholders any benefits to owning their investment.

97. The Board's decision to withhold dividends was not a valid exercise of business judgment but rather part and parcel to Defendants' self-dealing ploy to oppress Preferred Stockholder, devalue the Preferred Stock and effectively squeeze out the Preferred Stockholders at an unfair price and pursuant to an unfair process.

**B. Defendants Disenfranchise Preferred Stockholders' Right To Elect Two RepresentativesTo The Company's Board**

98. Section 5(b)(6)(B) of the W2007 Grace Charter provides that when dividends are in *arrears* for six or more quarters, the Preferred Stockholders (voting as a single class) are entitled to elect two additional directors to the Board at an annual or special meeting called for such a purpose.

99. Various qualified board nominees have been submitted by certain Preferred Stockholders. However, to date, none of the nominees have been successfully seated to the Board because according to the Company, there was no *quorum* present at any of the special meetings held on June 3, 2010, December 14, 2010 and March 27, 2012, and, thus, the Preferred Stockholders still have no representation on the Board.

100. The Company has released the following statement:

> The Company's Bylaws, which are available on the Company's website (www.equityinns.com), require that a quorum be present in person or represented by proxy at any meeting of holders of the Grace Preferred Stock for the Company to conduct business at such meeting and for such an election to occur. The Company's Bylaws provide that holders of a majority of the outstanding shares of Grace Preferred Stock constitute a quorum.

*See* Grace FAQ at 2.

101. To achieve a quorum, the majority of the votes entitled to be casted on the matter by the voting group must be present. *See* Tennessee Business Corporation Act § 48-17-206. However, after years of there being virtually no communications from the Company, no communications at any shareholder meeting, the Preferred Stockholders had been unable to reach a *quorum* for purposes of seating two representatives to the Board which they clearly need in order to protect their interests.

102. The Board has no interest in assisting the Preferred Stockholders to seat two new directors, even though it is in its power to waive the *quorum* requirement or simply appointthe two Preferred Stockholder nominees who obtained the most votes at the last special meeting held on March 27, 2012.

103. The Preferred Stockholders are currently frozen out of the corporate governance of the Company, a right granted to them by the Charter and triggered by the fact that the Company has not paid the Preferred Stockholder dividends for over five years.

104. As a result, the Preferred Stockholders' right to elect two Board representatives has been effectively disenfranchised. This couple with the fact that the Preferred Stockholders have not received a dividend since 2008 and have no efficient secondary market in which to sell their shares at a fair price, the Preferred Stockholders are effectively trapped by the Company's Board and Majority Shareholders, and by Goldman Sachs who is leading the charge.

105. Given the nature of a wholly-owned private company and the oppressive tactics engaged in by Defendants, the Preferred Stockholders need representation on the Board. Otherwise, Defendants will continue depriving the Preferred Stockholders of any benefit to their investment in the Preferred Stock.

### C. Phase Two: The Company, through its Sister Company PDF, Secretly PurchasesA Controlling Interest In the Preferred Stock and Squeezes Out The Preferred Stockholders On The Cheap

106. Goldman Sachs had correctly surmised that the mistreatment of the Preferred Stockholders for a period that seemed endless would eventually drive investors to sell their Preferred Stock, even at a substantial loss.

107. Thus, after being mistreated by the Board and the Majority Shareholders, various Preferred Stockholders, including Plaintiffs Johnson, Verthelyi and Lynch, sold their Preferred Stock at a loss. Little did they and others know that they were actually selling their stock back to the Company through its affiliate, PDF Holdings, LLC ("PDF" or "Majority Preferred Shareholder").

108. Defendants' scheme worked extremely well as the Series B Preferred Stock traded between $1.42 and $9.90 per share from January 1, 2012 through August 15, 2013, and the Series C Preferred Stock traded between $1.50 and $12.00 per share during that same time frame. Thus, both the Series B and C Preferred Stock were trading well below $35.33 per share, the price the Company would have had to pay to redeem the Preferred Stock.

109. On September 17, 2012, W2007 Grace posted a press release on its website containing thefollowing announcement:

> [W2007 Grace] today announced that a sister company of the Company hasrecently acquired approximately 35% of the aggregate amount of issued andoutstanding [Preferred Stock], which acquired shares remain outstanding.That sister company and

> its affiliates (including the Company) may also fromtime to time consider entering into one or more other transaction with respectto the Company, including the acquisition or disposition of securities of, orinterests in, the Company (including additional transactions with respect to theSeries B and Series C preferred shares of the Company).

110. The Company's press release did not identify the purchasing entity or the dates or prices of the trades and, upon information and belief, the Defendants created the "sister company" for the sole purpose of engaging in this creeping tender offer of the Preferred Stock at an unfair price that was well below the redemption price of $35.33 per share.

111. Thereafter, on August 13, 2013, the Company announced that this same sister company, finally identified by the Company as PDF, had amassed another "24.3% of the aggregate amount of issued and outstanding Series B and C preferred shares of the Company" purportedly bringing its total ownership interest to **58.8% of the outstanding Preferred Stock.**

112. According to the August 13th Press Release, "PDF has also informed the Company of its intention to consider a tender offer for the remaining preferred shares of the Company later in 2013."

113. By using PDF to buy a controlling interest in the Preferred Stock, the Board, the Majority Shareholders and Goldman Sachs were able to accomplish several things:

a. they bought control over the election of the two representative board members guaranteed to the Preferred Stockholders by the Charter and could block *quorum* at any future special meeting held for the election of board representatives;

b. they improperly avoided redemption of the Preferred Stock at $35.33 per share; and

c. they effectively reduced the number of outstanding Preferred Stockholders so that they could strengthen the Company's request to the SEC for a reporting exemption; thereby, avoidingpublic and SEC scrutiny.

114. However, the Board, the Majority Shareholders and Goldman Sachs' use of PDF to purchase a majority interest in the Company's Preferred Stock was wholly improper.

115. The Charter prohibits the Company from purchasing shares of the Preferred Stock in the open market by tender offer or private agreement when the Company is *in arrears* on its dividend obligation. Specifically, the Charter states:

> Subject to applicable law *and the limitation on purchases when dividends on the Series B [and C] Preferred Stock are in arrears*, we may, at any time and from timeto time, purchase any shares of the [Preferred Stock] in the open market, by tender or by private agreement.

*See*Section 5(b)(6).

116. Moreover, the Charter sets forth that when dividends are in *arrears,* the right of W2007 Grace to purchase Preferred Stock is limited to a purchase that is "necessary to maintain the Corporations qualification as a REIT," which was not the case here as the Company is no longer a REIT.*See* Section 5(b)(3).

117. Defendants also caused PDF to purchase more than 9.9% of the Series B or Series C Preferred Stock in violation of a straightforward ownership restriction in the Charter and the stock certificates, which provide:

> No Person may (i) Beneficially Own or Constructively Own shares of any series of Preferred Stock in excess of 9.9% of the number of outstanding shares of such series of Preferred Stock....

118. Goldman Sachs, the Company's Board and Majority Shareholders conspired to do an end-run around these Charter obligations and frustrated the various contractual protections in the Charter by using PDF to purchase a controlling interest in the Preferred Stock.

119. The Company's use of a "sister company" to accomplish that which the Company was contractually prohibited from doing resulted in a breach of the Charter, or in the alternative, a breach of the covenant of good faith and fair dealing implied in the Charter by the Company.

120. Moreover, PDF, at the direction of the Board, its Majority Shareholders and Goldman Sachs, purchased the Preferred Stock from unassuming investors who had no knowledge of the relationship between PDF and the Company and the other Defendants.

121. The Company's disclosures about PDF and its plans were not only inadequate, they were virtually non-existent.For example, investors were not informed of the fact that Defendants used PDF to engage in a *de facto*redemption at an unfair price.The Company, under the control of its Board, its Majority Shareholders and Goldman Sachs, failed to make basic disclosures about the related-party creeping tender offer, including:

(a) PDF is an affiliate of the Company;

(b) PDF purchased Preferred Stock at the direction of the Defendants;

(c) PDF, as an insider, had information about the value of the Company and the value of the Preferred Stockholders' interest that was not available to the Preferred Stockholders; and

(d) the Preferred Stock was sold to PDF at a price well below $35.33 the amount that would have been paid had the Company redeemed the Preferred Stock.

122. As a result, in addition to causing the Company to breach its contractual obligations, the Company's Board and its Majority Shareholders, breached their fiduciary duties of candor, good faith and fair dealing to the Preferred Stockholders in connection with the undisclosed related-party creeping tender offer. The Goldman Sachs Defendants aided and abetted the Board and the Majority Shareholders' breach of their fiduciary duties.

123. By squeezing out the Preferred Stockholder, Defendants sought to eliminate a more than $200 million obligation to these investors for an unfair price and pursuant to a wholly unfair and secretive process.

124. By wiping away 60% of the Company's obligation to Series B and C Preferred Stockholders for a nominal amount (as compared to the amount it would have owed) and without

making the necessary disclosures, Goldman Sachs, the Board and the Majority Shareholders also caused PDF to violate the Tennessee Securities Act by engaging in unlawful insider trading.

125. The Series B and C Preferred Stockholders who have been held hostage since 2007 without the benefit of dividends or any value whatsoever from their investment, were denied a functioning secondary market in which to sell their stock, and Plaintiffs Johnson, Verthelyi and Lynch and other Preferred Stockholders were deceived into selling their Preferred Stock at the first opportunity that revealed itself. Plaintiffs Johnson, Verthelyi and Lynchsold Preferred Stock while completely unaware of the Company's affiliation with PDF or that PDF was contemplating a tender offer at the end of 2013.

126. Defendants have engaged in a classic oppression scenario where those in control of the Company, here Goldman Sachs, the Majority Shareholders and the Board, deny those not in control, here the Preferred Stockholders, any return on their investment and then those in control buy the shares at a very low pricepursuant to an unfair process.

127. Plaintiffs and the other members of the Class were harmed as a result of Defendants' failure to make necessary and customary disclosures, failure to pay a fair price and failure to engage in a fair process.

## CLASS ALLEGATIONS

128. Plaintiffs bring this action on behalf of themselves and pursuant to Tennessee Rules of Civil Procedure 23.01 on behalf of a Class consisting of all persons and entities that own or owned W2007 Grace Series B Preferred Stock or Series C Preferred Stock at any time from October 25, 2007 to present, and who were damaged thereby (the "Class"). Excluded from the Class are the Defendants and any of their affiliates, successors and assigns.

129. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are over 300 members in the proposed Class.

130. As of October 25, 2007, W2007 Grace had 3.45 million shares of Series B Preferred Stock outstanding and 2.4 million shares of Series C Preferred Stock outstanding. Record owners and other members of the Class may be identified from records maintained by W2007 Grace and/or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

131. Plaintiffs' claims are typical of the claims of the other members of the Class as all members of the Class purchased or otherwise acquired Series B Preferred Stock or Series C Preferred Stock during the class period and were similarly affected by Defendants' wrongful conduct that is complained of herein.

132. Plaintiffs will fairly and adequately protect the interests of the members of theClass and have retained counsel competent and experienced in class action, derivative andsecurities litigation. Plaintiffs have no interests that are adverse or antagonistic to the Class.

133. A class action is superior to other available methods for the fair and efficientadjudication of this controversy. Because the damages suffered by individual members of theClass may be relatively small, the expense and burden of individual litigation make itimpracticable for Class members individually to seek redress for the wrongful conduct allegedherein.

134. Common questions of law and fact exist as to all members of the Class, andpredominate over any questions solely affecting individual members of the Class. Among thequestions of law and fact common to the Class are:

(a) Whether the Company breached the terms of the Charter and the certificate of designation for the Series B Preferred Stock or, in the alternative, the implied covenant of good faith and fair dealing inherent in that Charter and certificate of designation;

(b) Whether the Company breached the terms of the Charter and certificate of designation for the Series C Preferred Stock or, in the alternative, the implied covenant of good faith and fair dealing inherent in that Charter and certificate of designation;

(c) Whether one or more Defendants breached its fiduciary duties to the members of the Class;

(d) Whether the members of the Class are entitled to equitable relief, including an order requiring the Company to redeem the Series B Preferred Stock and the Series C Preferred Stock at $25 per share and pay all dividends owed.

(e) Whether one or more Defendants are liable for damages to the members of the Class, and the proper measure thereof, for breaches of contract, the implied covenant of good faith and fair dealing, and/or breach of fiduciary duty.

(f) Whether PDF committed securities fraud in violation of Tennessee Blue Sky Laws when it engaged in insider trading.

135. The prosecution of separate actions by individual Class members would create therisk of inconsistent or varying adjudications with respect to the individual Class members, whichwould establish incompatible standards of conduct for Defendants, or adjudications with

respectto individual Class members that would, as a practical matter, be dispositive of the interests ofthe other members not parties to the adjudications or substantially impair their ability to protecttheir interests.

136. Defendants have acted on grounds generally applicable to the Class with respectto the matters complained of herein, thereby making appropriate the relief sought herein withrespect to the Class as a whole.

## CAUSES OF ACTION

### COUNT I
Breach of Contract
(Against W2007 Grace)

137. Plaintiffs incorporate by reference and reallege each and every allegation set forth above, as though fully set forth herein.

138. The Charter and certificates of designation for the Series B Preferred Stock and Series C Preferred Stock were and are, for all purposes relevant hereto, contracts between the members of the Class and W2007 Grace.

139. The Charter and certificates of designation for the Series B Preferred Stock and for the Series C Preferred Stock provides Preferred Stockholders with:

a. the right to dividend payments at fixed interest rates;

b. certain rights in a redemption and rights against an improper *de facto* redemption;

c. a liquidation preferencebacked by assets that should include those assets previously held by ENN and transferred to W2007 Grace pursuant to the Merger;

d. the right to elect two director representatives to the Board when dividends are in *arrears* for six or more quarters; and

e. protection against any party owning more than a 9.9% interest in the Company.

140. W2007 Grace was obligated to act consistently with its contractual responsibilities under the Charter and certificates of designation.

141. The Company breached the Charter by depriving Plaintiffs and the other members of the Class dividends, alienating the Preferred Shareholders' right to a liquidation preference backed by ENNhotel assets, granting the related party common stockholder, Grace I and Whitehall, a preference superior to that of the Preferred Stockholders and failing to provide Preferred Stockholders access to representation on the Company's Board, a right triggered by the Company's failure to pay dividends.

142. Moreover, by using a sister company to purchase a 58.8% interest in the Preferred Stock, W2007 Gracebreached the Charter and certificates of designation, which prohibit anyone from owning more than 9.9% of the Preferred Stock and also prohibit W2007 Grace from purchasing Preferred Stock when the payment of dividends is in *arrears*. W2007 Grace's use of a "strawman" to accomplish that which it was contractually unable to do is a breach of the terms of the Charter and certificates of designation.

143. Plaintiffs and the other members of the Class suffered damages as a direct and proximate result of the forgoing breaches of contact.

COUNT II
Breach of the Implied Covenant of
Good Faith and Fair Dealing
(Against W2007 Grace)

144. Plaintiffs incorporate by reference and reallege each and every allegation set forth above, as though fully set forth herein.

145. Plaintiffs asserts this Count II in the alternative to Count I hereof, to the extent it is determined that no breach of contract occurred as alleged in Count I.

146. The Company's Charter and the certificates of designation for the Series B Preferred Stock and Series C Preferred Stock were and are, for all purposes relevant hereto, contracts between the members of the Class and W2007 Grace.

147. Inherent in these contracts was, and is, an implied covenant of good faith and fair dealing, requiring W2007 Grace to deal fairly with Plaintiffs and the other members of the Class, to fulfill its obligations to Plaintiffs and the Class in good faith, and not to deprive Plaintiffs and the Class of the fruits of their bargain.

148. Defendants engaged in a scheme to oppress and squeeze out the Preferred Stockholders and such misconduct included: (1) the nonpayment of dividends to Grace Preferred Stockholders; (2) the siphoning of assets from the Company; (3) the redirection of all cash assets to entities affiliated with and controlled by Goldman Sachs; (4)the failure to make adequate and timelydisclosures about the Company to the Preferred Stockholders; (5)the related-party loan covenants used to interfere with the payment of dividends, the option granted to the Goldman Sachs affiliate to purchase up to 97% of the ENN assets; (6) the *de facto* redemption through an undisclosed and self-dealing creeping tender offer aimed at purchasing all or substantially all of the outstanding Series B and Series C Preferred Stock using Defendants PFD; and (7) the disenfranchisement of the Preferred Stockholders' right to elect two board director-representatives. The Company sought to deprive Plaintiffs and the other members of the Class of any and all benefits to owning Preferred Stock in W2007 Grace.

149. As a result of this misconduct, W2007 Grace has breached its implied covenant of good faith and fair dealing inherent in the Charter and certificates of designation for the Series B Preferred Stock and for the Series C Preferred Stock.

150. Through the implied covenant of good faith and fair dealing, W2007 Grace was obligated not to eliminate the rights and interests of the Class in receiving dividends or a liquidation preference. By effectively eliminating such rights and interests through a classic oppression and squeeze out scheme, W2007 Graceacted arbitrarily and unreasonably and not in good faith or with fair dealingtoward the members of the Class.

151. Plaintiffs and the other members of the Class suffered damages as a direct and proximate result of the forgoing breach of the implied covenant of good faith and fair dealing.

COUNT III
Breach of Fiduciary Duty - Oppression
(againstthe Board and Majority Shareholders)

152. Plaintiffs incorporate by reference and reallege each and every allegation set forth above, as though fully set forth herein.

153. W2007 Grace's Board and Majority Shareholders owed fiduciary duties of due care, good faith, loyalty and candor to the Preferred Stockholders, including Plaintiffs and the other members of the Class, and were and are required to use their utmost ability to control and manage W2007 Grace in a fair, just, honest, and equitable manner in furtherance of the best interests of Preferred Stockholders and not their personal interests or that of Goldman Sachs and its affiliates.

154. Defendants W2007 Grace and its Board failed to act as custodians entrusted with the management of the Preferred Stockholders and instead engaged in a pattern of misconduct directly aimed at oppressing and squeezing out the Preferred Stockholders from the Company at an unfair price and pursuant to an unfair process.

155. Specifically, these Defendants engaged in unlawful self-dealing by:

a. suppressing the secondary market in the Preferred Stock by refusing to release information to the public that was and is necessary for a fair and orderly secondary market;

b. suppressing the marketability of the Preferred Stock by refusing to make them eligible for electronic transfer at the DTC;

c. failing to pay regular dividends to the Preferred Stockholders when there is surplus and earnings;

d. restructuring the assets, property interests and loan covenants so that the Preferred Stockholders hold stock in the Company which holds less valuable property interests that that of predecessor ENN;

e. failing to assist the Preferred Stockholders to appoint two director-nominees to serve as the Preferred Stockholders' representatives as provided by the Charter; and

f. permitting PDF Holdings LLC to engage in a creeping tender offer without making the proper disclosures.

156. None of the misconduct detailed herein was entirely or intrinsically fair, nor did it further any valid business purpose other than to squeeze out the Preferred Stockholders at an unfair price and redirect all net income to Goldman Sachs or its affiliates.

157. As a direct and proximate result of the foregoing breaches of fiduciary duty, Preferred Stockholders suffered damages.

COUNT IV
Aiding and Abetting Breach of Fiduciary Duty - Oppression
(againstthe Goldman Sachs Defendants)

158. Plaintiffs incorporate by reference and reallege each and every allegation set forth above, as though fully set forth herein.

159. The Goldman Sachs Defendants controlW2007 Grace and its Board. W2007 Grace and its Board engaged in the misconduct described above in Count IIIat the command of and for the exclusive benefit of Goldman Sachs and its affiliates.

160. Through its misconduct, the Goldman Sachs Defendants aided and abetted the Company's breaches of fiduciary duties to the Preferred Stockholders.

161. None of the misconduct detailed above was entirely or intrinsically fair, nor did it further any valid business purpose other than to squeeze out thePreferred Stockholders at an unfair price and redirect all net income to Goldman Sachs or its affiliates.

162. As a direct and proximate result of the foregoing aiding and abetting the breaches of fiduciary duty, Preferred Stockholders suffered damages.

COUNT V
Breach of Fiduciary Duty – Squeeze Out
(againstthe Board and Majority Shareholders)

163. Plaintiffs incorporate by reference and reallege each and every allegation set forth above, as though fully set forth herein.

164. W2007 Grace's Board and Majority Shareholders owed fiduciary duties of due care, good faith, loyalty and candor to the Preferred Stockholders, including Plaintiffs and the other members of the Class, and were and are required to use their utmost ability to control and manage W2007 Grace in a fair, just, honest, and equitable manner in furtherance of the best interests of Preferred Stockholders and not their personal interests or that of Goldman Sachs and its affiliates.

165. Defendants W2007 Grace and its Board failed to act as custodians entrusted with the management of the Preferred Stockholders and instead engaged in a pattern of misconduct directly aimed at oppressing and squeezing out the Preferred Stockholders from the Company at an unfair price and pursuant to an unfair process.

166. Specifically, these Defendants, acting in concert, concocted and executed on their plan to squeeze out the Preferred Stockholders through the use of PDF.

167. They created PDF for the sole purpose of engaging in a creeping tender offer that would permit the Company to retire its outstanding obligations to the Preferred Stockholders at a substantial discount over issuing a redemption.

168. The Company failed to inform Plaintiffs and other members of the Class that PDF was affiliated with the Company and that this was a related-party transaction aimed at purchasing a controlling stake in the Preferred Stock.

169. Plaintiffs and other members of the Class did not know that these Defendantswere planning an overall exit strategy with respect to the Company's obligations to Preferred Stockholders.

170. Plaintiffs and other members of the Class did not know that PDF was engaging in a creeping tender offer that was in effect a *de facto* redemption by the Company at a heavily discounted price.

171. These Defendants also breached their duty of good faith, fair dealing and loyalty by engaging in this secretive and unfair process and failing to pay a fair price.

172. None of the misconduct detailed herein was entirely or intrinsically fair, nor did it further any valid business purpose other than to squeeze out the Preferred Stockholders at an unfair price and through an unfair process.

173. As a direct and proximate result of the foregoing breaches of fiduciary duty, Preferred Stockholders suffered damages.

COUNT VI
Aiding and Abetting Breach of Fiduciary Duty – Squeeze Out
(againstPDF and the Goldman Sachs Defendants)

174. Plaintiffs incorporate by reference and reallege each and every allegation set forth above, as though fully set forth herein.

175. The Goldman Sachs Defendants control W2007 Grace, its Board, the Majority Shareholders and PDF. W2007 Grace and its Board engaged in the misconduct described above at the command of and for the exclusive benefit of, Goldman Sachs and its affiliates.

176. The Goldman Sachs Defendants and PDF aided and abetted the Board and Majority Shareholders' breaches of fiduciary duties to the Preferred Stockholders in Count V. The Goldman Sachs Defendants structured the creeping tender offer and created PDF for the sole purpose of buying a majority interest in the Preferred Stock at a price and through a process that were not entirely fair to the Preferred Stockholders, and lacked adequate disclosures.

177. None of the misconduct detailed above was entirely or intrinsically fair, nor did it further any valid business purpose other than to squeeze out the Preferred Stockholders at an unfair price and redirect all net income to Goldman Sachs or its affiliates.

178. As a direct and proximate result of the foregoing breaches of fiduciary duty, aided and abetted by the Goldman Sachs Defendants and PDF, the Preferred Stockholders suffered damages.

COUNT VII
Violation of Tennessee Blue Sky Laws
(Against PDF)

179. Plaintiffs incorporate by reference and reallege each and every allegation set forth above, as though fully set forth herein.

180. PDF purchased a 58.8% interest in the outstanding Series B and Series C Preferred Stock on the basis of material insider information that was not available to the public.

181. Namely, Plaintiffs Johnson, Verthelyi and Lynch and other members of the Class who had sold their stock contemporaneously with PDF's purchase of Preferred Stock did not

know that PDF was affiliated with the Company and that this was a related-party transaction aimed at purchasing a controlling stake in the Preferred Stock.

182. Plaintiffs Johnson, Verthelyi and Lynch and other members of the Class did not know that the Company was planning an exit strategy with respect to the Company's obligations to Preferred Stockholders and that it was engaging in a secretive creeping tender offer to acquire a controlling interest in the Preferred Stock.

183. Plaintiffs Johnson, Verthelyi and Lynchwere not informed at the time of the sale of the fact that PDF was engaging in a creeping tender offer that was in effect a de facto redemption by the Company at a heavily discounted price.

184. PDF therefore engaged in insider trading when it purchased Preferred Stock from Plaintiffs while knowing the inside material information above. PDF therefore violated Tenn. Code Ann. § 48-2-121(a) at the time of the sale.

185. Tenn. Code Ann. § 48-2-122(b)(1) provides that the purchaser of a security will be required to return the security where the purchaser violated the provisions of Tenn. Code Ann. § 48-2-121(a) and thus, Plaintiffs and the other Preferred Stockholders who sold their stock to PDF for an unfair price are entitled to seek rescission, or at the very least PDF must disgorge any ill-gotten profits from engaging in insider trading.

186. Plaintiffsdid not know, and in the exercise of reasonable care could not have known, of Defendants' motive and scheme to engage in an unfair squeeze out and de facto redemption when they sold their stock.

187. Absent discovery there can be no certainty as to the identity of the ultimate purchaser of Plaintiffs'shares, however given the timing and Defendants suppression of any

secondary market, there is every indication of a strong likelihood that Plaintiffs' stock was purchased directly or indirectly by PDF.

188. Plaintiffs and all other similarly situated Preferred Stockholders were harmed by PDF's purchase of Preferred Stock in violation of Tenn. Code Ann. § 48-2-122(a).

COUNT VIII
Tennessee Business Corporation Act § 48-17-103
(Against the Company, its Board and PDF)

189. Plaintiffs incorporate by reference and reallege each and every allegation set forth above, as though fully set forth herein.

190. Section 5(b)(6)(B) of the W2007 Grace Charter provides that when dividends are in arrears for six or more quarters, the Preferred Stockholders (voting as a single class) are entitled to elect two additional directors to the Board at an annual or special meeting called for such a purpose.

191. The Preferred Stockholders have made various nominations for the two open board positions, but have been unsuccessful in getting any of those nominees appointed to the Board.

192. The Company and its Board claim that the Preferred Stockholders have not satisfied the quorum obligation and refuse to assist the Preferred Stockholders to appoint two director representatives to the Board though it has the authority to do so.

193. Section 48-17-103 of the Tennessee Business Corporation Act provides ("TCBA") that "(b) [t]he court may fix the time and place of the meeting, determine the shares entitled to participate in the meeting, specify a record date for determining shareholders entitled to notice of and vote at the meeting, prescribe the form and content of the meeting notice, fix the quorum required for specific matters to be considered at the meeting (or direct that the votes

represented at the meeting constitute a quorum for action on those matters) and enter other orders necessary to accomplish the purpose or purposes of the meeting.

194. Since the Preferred Stockholders are unable to satisfy quorum and the Board is unwilling to assist them in appointing two representative directors to the Board, Plaintiffs seek equitable relief from the Court under Section 48-17-103 to set out a fair and reasonable process in aid of the appointment of two Board representatives on behalf of the Preferred Stockholders. Plaintiffs further request that any interested party, including PDF, be required to abstain from voting its shares either directly or indirectly through a proxy.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

1. Determining that this action is a proper class action under Rule 23.02 of the Tennessee Rules of Civil Procedure on behalf of the Class defined herein;
2. Declaring that Defendant W2007 Grace breached the express termsof the Charter and certificates of designation of the Series B Preferred Stock and Series C Preferred Stock or, in the alternative, breached the implied covenant of good faith and fair dealing inherent in the Charter and certificates of designation of the Series B Preferred Stock and Series C Preferred Stock;
3. Awarding compensatory damages in favor of Plaintiff and the other Class members against W2007 Grace, jointly and severally, for all damagessustained as a result of such W2007 Grace's breach of the express terms of the Charter and certificates ofdesignation or, in the alternative, breach of the implied covenant of good faith and fair dealing, in an amount to be proven at trial, including interest thereon;

4. Declaring that by their conduct the Board and Majority Shareholders breached their fiduciary duties to the Preferred Stockholders;
5. Declaring that by their conduct the Goldman Sachs Defendants and PDF aided and abetted the Board's and Majority Shareholders' breachesof fiduciary duties to the Preferred Stockholders;
6. Awarding compensatory damages, including the payment of all dividends owed and cumulated as of the date of the judgment, the contingent payment of all future dividends where the Company has sufficient surplus and earnings and all other related damages in an amount to be proven at trial,including interest thereon;
7. Granting equitable relief, including ordering the redemption of the Grace Preferred Stock at $25 per share of Series B Preferred Stock and $25 per share of Series C Preferred Stock, or in the alternative, granting equitable relief in aid of the election of two representatives of the Preferred Stockholders to the Board and requiring PDF and any other conflicted and self-interested parties to abstain from participating in the election;
8. Awarding punitive damages to the extent the Court deems it appropriate;

9. Awarding Plaintiffs their reasonable costs and expenses incurred in this action, including counsel fees and expert fees, and, if applicable, pre-judgment and post-judgment interest; and

10. Such other and further relief as the Court may deem just and proper.

Dated: October 2, 2013

Respectfully submitted,

/s/

Van D. Turner, Jr. (TN Id. # 022603)
Hagler Bruce & Turner, PLLC
2650 Thousand Oaks Boulevard, Suite 2140
Memphis, Tennessee 38118
(901) 522-9161 - Office
(901) 522-9168 - Facsimile
*Counsel for Plaintiffs*

Chimicles & Tikellis LLP
Nicholas E. Chimicles, Esq. (PA-17928)
Kimberly Donaldson Smith, Esq. (PA- 83116)
Catherine Pratsinakis, Esq. (PA- 88062)
One Haverford Square
361 Lancaster Ave.
Haverford, PA 19041-1554
Telephone: (610)642-8500
Facsimile: (610)649-3633

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 2, 2013, a copy of the foregoing was sent via electronic mail or First Class United States Mail to Attorney Bob Walker, Walker, Tipps & Malone, 150 Fourth Avenue North, 2300 One Nashville Place, Nashville, Tennessee 37219.

VAN TURNER, JR.