**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| DAVID JOHNSON PATRICK LYNCH, ROBERTO VERTHELYI and FREDERICK SHEARIN, on behalf of themselves and all others similarly situated, | § | |
| Plaintiffs, | § | No. 2:13-cv-2777 SHM/DKV |
| vs. | § | |
| W2007 GRACE ACQUISITION I, INC. TODD P. GIANNOBLE, GREGORY FAY, BRIAN NORDAHL, DANIEL E. SMITH, MARK RICKETTS, THE GOLDMAN SACHS GROUP, INC., GOLDMAN SACHS REALTY MANAGEMENT L.P., WHITEHALL PARALLEL GLOBAL REAL ESTATE LIMITED PARTNERSHIP 2007, W2007 FINANCE SUB, LLC, W2007 GRACE I, LLC, and PFD HOLDINGS, LLC. | § | |
| Defendants. | § | |

**RESPONSE TO MOTION TO APPROVE SETTLEMENT AND OBJECTION TO SETTLEMENT OF CLASS ACTION LITIGATION**

Pursuant to the Notice of Proposed Class Settlement dated May 21, 2015 (the "**Notice**"), Plaintiffs in the attached lawsuit (hereinafter referred to as "**Settlors**"), hereby contingently object to the proposed class action settlement reached in the above-captioned action (the **"Objection"**). In support of their Objection, Settlors state as follows:

## INTRODUCTION

Settlors are contingent members of the Holder Class, and, alternatively, part of the Seller Class, as defined in the Order of Settlement in the above-styled lawsuit (the **"Settlement"**). On August 7, 2015, Settlors (via their trustee and, alternatively, in their individual capacities) filed a lawsuit against W2007 Grace Acquisition I, Inc., PFD Holdings, LLC, Goldman Sachs Realty

Management, L.P. f/k/a Archon Group, L.P., Todd P. Giannoble, Brian T. Nordahl, Gregory M. Fay, Daniel E. Smith, and Mark Ricketts in the United States District Court for the Southern District of New York, Manhattan Division, C.A. No. 15-6242 (the **"Settlors' Lawsuit"**). A true and correct copy of the Original Complaint filed in the Settlors' Lawsuit is attached hereto as Exhibit A and incorporated by reference for all purposes. The Settlors' Lawsuit asserts claims that, if determined in Settlors' favor, would result in Settlors being part of the Holder Class in this lawsuit.

The Settlors sold their preferred shares in W2007 Grace Acquisition, Inc. (**"Grace"**). The Settlors' Lawsuit seeks to rescind the Stock Purchase Agreements (**"SPA" or "SPAs"**) the Settlors were induced to enter into with PFD Holdings, LLC (**"PFD"**). If Settlors are successful, they will regain their Holder Class status in this lawsuit and thereby be entitled to a distribution under this Settlement. Due to the timing of the Settlement in this lawsuit, Settlors must object now to preserve their right to object to the fairness and reasonableness of this Settlement's terms and to preserve the funds they believe they are entitled to.

Given the circumstances, Settlors ask the Court to abate its final determination of the Settlement until the Court in the Settlors' Lawsuit determines whether to rescind the SPAs. If the SPAs are rescinded, Settlors may re-urge their concerns regarding the fairness and reasonableness of the Settlement, or, in the alternative, ask the Court to finalize the Settlement, but stay payment of distributions until a determination is reached by the Court in the Settlors' Lawsuit.

## IDENTITY OF OBJECTOR AND INTENT TO APPEAR

These objections are filed by Settlors (Plaintiffs in the Settlors' Lawsuit attached as Exhibit A). Settlors are potential members of the Holder Class as discussed herein. Settlors sold

their collective 722,755 shares of 8.75% Series B Cumulative Preferred Stock and 699,730 shares of 9.0% Series C Cumulative Preferred Stock in Grace (the **"<u>Preferred Stock</u>" or "<u>Preferred Shares</u>")** to PFD.

Settlors are as follows:

a. Lloyd I. Miller Trust A-4 sold its 81,835 shares of 8.75% Series B Cumulative Preferred Stock and 11,050 shares of 9.0% Series C Cumulative Preferred Stock in W2007 Grace Acquisition I, Inc. to PFD Holdings, LLC;

b. Milfam II, L.P. sold its 60,175 shares of 8.75% Series B Cumulative Preferred Stock and 42,721 shares of 9.0% Series C Cumulative Preferred Stock in W2007 Grace Acquisition I, Inc. to PFD Holdings, LLC;

c. Lenado Partners, Series A of Lenado Capital Partners, L.P. sold its 67,100 shares of 8.75% Series B Cumulative Preferred Stock and 79,000 shares of 9.0% Series C Cumulative Preferred Stock in W2007 Grace Acquisition I, Inc. to PFD Holdings, LLC;

d. Lenado DP, Series A of Lenado DP, L.P. sold its 8,000 shares of 8.75% Series B Cumulative Preferred Stock and 8,000 shares of 9.0% Series C Cumulative Preferred Stock in W2007 Grace Acquisition I, Inc. to PFD Holdings, LLC;

e. SPV UNO, LLC sold its 400 shares of 9.0% Series C Cumulative Preferred Stock in W2007 Grace Acquisition I, Inc. to PFD Holdings, LLC;

f. Nikos Hecht, individually sold his 18,564 shares of 8.75% Series B Cumulative Preferred Stock and 34,546 shares of 9.0% Series C Cumulative Preferred Stock in W2007 Grace Acquisition I, Inc. to PFD Holdings, LLC;

g. The Hecht Children's Trust II sold its 9,111 shares of 8.75% Series B Cumulative Preferred Stock and 16,954 shares of 9.0% Series C Cumulative Preferred Stock in W2007 Grace Acquisition I, Inc. to PFD Holdings, LLC;

h. Broadbill Partners, LP sold its 102,691 shares of 8.75% Series B Cumulative Preferred Stock and 201,746 shares of 9.0% Series C Cumulative Preferred Stock in W2007 Grace Acquisition I, Inc. to PFD Holdings, LLC;

i. Broadbill Partners II, LP sold its 18,091 shares of 8.75% Series B Cumulative Preferred Stock and 23,292 shares of 9.0% Series C Cumulative Preferred Stock in W2007 Grace Acquisition I, Inc. to PFD Holdings, LLC;

j. Costa Brava Partnership III LP sold its 355,888 shares of 8.75% Series B Cumulative Preferred Stock and 282,021 shares of 9.0% Series C Cumulative Preferred Stock in W2007 Grace Acquisition I, Inc. to PFD Holdings, LLC; and

k. Kurt Lageschulte IRRA sold its 1,300 shares of 8.75% Series B Cumulative Preferred Stock in W2007 Grace Acquisition I, Inc. to PFD Holdings, LLC.

Settlors' Preferred Stock was sold between October 25, 2007 and the date of this Objection. Specifically, the Settlors' Preferred Stock was sold on or about August 9, 2013, pursuant to the SPAs discussed herein. Settlors held 1,422,485 shares of Preferred Stock, which equates to a payment of $36,984,610 if paid as members of the Holder Class. Settlors oppose the Settlement as noticed, and they further oppose the Settlement because of the insufficient monetary relief and overly broad releases contained therein. Settlors intend to appear at the Final Approval Hearing through counsel and present argument in support of these objections.

## STANDARD UNDER RULE 23(e)(2)

A district court may approve a class action settlement "only after a hearing and on finding that it is **fair, reasonable, and adequate**." FED. R. CIV. P. 23(e)(2) (emphasis added); *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 754 (6th Cir. 2013). "The primary concern . . . is the protection of those class members . . . whose rights may not have been given due regard by the negotiating parties." *Officers for Justice v. Civ. Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982).

The Settlement is neither fair, reasonable, nor adequate. A District Court looks to seven factors to determine whether a class action settlement is fair, reasonable, and adequate: "(1) the

risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).

The court should also analyze whether the settlement "gives preferential treatment to the named plaintiffs while only perfunctory relief to unnamed class members." *Vassalle*, 708 F.3d at 755 (citing *Williams v. Vukovich*, 720 F.2d 909, 925 n. 11 (6th Cir. 1981)). The "district court ha[s] fiduciary responsibility to the silent class members" to see that the settlement is fair and adequate. *Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 23 (2d Cir. 1987). Where, as here, Settlors are not represented by class counsel and have been purposefully excluded from the Seller Class, despite suffering the same harm caused by Defendants as similarly situated members of the Seller Class, the Court should not approve the Settlement in its current form. The Settlement sacrifices remedies of Settlors to benefit another: the Seller Class. "One sign that a settlement may not be fair is that some segments of the class are treated differently from others." *In Re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 808 (3d Cir. 1995).

Here, the proposed Settlement offers an amount far less than what Defendants are currently contractually obligated to pay to members of the Holder Class, without even considering the actual tort damages sought, punitive or exemplary damages. The timing of the Settlement suggests that this is yet another example of how Defendants have defrauded the Preferred Shareholders as the Settlement allows Defendants to complete the liquidation of Grace without paying them the required Liquidation Preference, as discussed below. While the issues involved may be complex, the amount of Settlement offered here is inadequate compared to the

amount the Preferred Shareholders are already legally entitled to, absent any of the claims at issue in this lawsuit.

Additionally, the payment of $26 per share to members of the Holder Class and a $6 million fund to Seller Class will dilute the remaining funds available to the detriment of Settlors, who have been purposefully excluded from the Settlement, despite suffering the same harm as members of the Seller Class.

## ARGUMENT AND AUTHORITIES

Settlors object to the Settlement on the following grounds:

### I. Settlors are engaged in a lawsuit against PFD, Grace, and Grace's directors, which may put Settlors back in the Holder Class.

The Settlors' Lawsuit seeks to rescind the SPAs they entered into with PFD. If successful, the Settlors will be members of the Holder Class. As provided in the Original Complaint, the SPAs should be set aside because Defendants, as a publically traded company, failed to comply with their reporting and disclosure obligations at the time of the sale and concealed material information. Pursuant to the Securities Exchange Commission's (**"SEC"**) Cease and Desist Order entered earlier this year, Settlors now know that Grace intentionally miscounted the number of its shareholders of record to avoid making public filings and disclosures. As a result, Grace deprived Preferred Shareholders, including Settlors, of certain material omissions regarding Grace's operations, finances, and future prospects and fraudulently induced Settlors into entering the SPAs. *See* Ex. A at ¶¶ 97-111. In particular, Settlors and the investing public should have been made aware of the nature and terms of various agreements Grace entered into with related Goldman entities, which increased costs and allowed Grace to avoid paying dividends to the Preferred Shareholders. Had Settlors been aware of this

miscounting or if Grace had properly made the required filings with the SEC at the time the SPAs were entered into, Settlors would not have contracted with PFD.

If the SPAs are rescinded, Settlors will be members of the Holder Class. Settlors, with their 1,422,485 Preferred Shares, would constitute a significant portion of the Holder Class and are entitled to protection and preservation of the Settlement funds. Thus, Settlors ask the Court to stay adjudication and final approval of the Settlement or, in the alternative, Settlors request that the Court refrain from making any distributions under the Settlement pending the New York District Court's determination of whether the SPAs should be rescinded as a result of fraudulent inducement or material breach under New York law.

**II. Further, in the event that the Court in the Settlors' Lawsuit determines that the SPAs should be rescinded, restoring Settlors as shareholders, Settlors object to the terms of the Settlement as unreasonable, inadequate, and unfair.**

In the event that the Court in the Settlors' Lawsuit determines that the SPAs should be set aside, thereby making Settlors part of the Holder Class, Settlors object to the terms of the Settlement on the basis that it is unreasonable, unfair, and inadequate because: (1) the amount of compensation provided to members of the Holder Class when compared to the Liquidation Preference those individuals are entitled to as Preferred Shareholders following the completion of the ARC transaction[1] is de minimus; and (2) the Settlement contains overly broad releases.

**1. The monetary relief is de minimus.**

The class action complained that Grace had failed to pay $88.4 in dividends to the Preferred Shareholders, which equates to approximately $40 per share when added with the redemption price of $25 per share as provided under Grace's Amended and Restated Charter. However, the current Settlement provides only $1 above the Preferred Shareholder's redemption

[1] On February 27, 2015, Grace completed the transaction whereby it sold substantially all of its assets to American Capital Hospitality Trust, Inc. (**"ARC"**) outside the regular course of its business.

price, irrespective of the unpaid dividends. As a result, the $1 over redemption settlement is de minimus when compared to damages sought on behalf of the class in the lawsuit, and offensive when considered in light of the contractual amount Preferred Shareholders are presently entitled to receive. Defendants oppressed, deceived, and deprived the Preferred Shareholders for years, and now this Settlement seeks to allow them to further benefit at the expense of the Preferred Shareholders. Specifically, since the Settlement allows Defendants to avoid their contractual obligation to payout the Liquidation Preference and releases them from any future legal claims, only Defendants benefit from the Settlement. Not only should Defendants not profit from their actions, which this Settlement allows, but they should be required to pay an amount *above* the Liquidation Preference to holders of Preferred Shares.

Grace's Amended and Restated Charter provides that Preferred Shareholders are entitled to receive a Liquidation Preference in the event of a liquidation, in the amount of $25 per share plus accrued, but unpaid dividends. *See* Amended and Restated Charter at § 5(b)(4)(A), a true and correct copy of which is attached as Exhibit B and incorporated herein for all purposes. Grace is in the process of a liquidation and, thus, its Preferred Shareholders are entitled to receive their Liquidation Preference of approximately $40 per share. In the context of corporations, liquidation means the "winding up of the affairs of the corporation by getting in its assets, settling with creditors and debtors, and apportioning the amount of profit and loss." *Quadrangle Offshore (Cayman) LLC v. Kenetech Corp.*, No. C.A. 16362, 1998 WL 778359 at *3 (Del. Ch. Oct. 21, 1998). Grace's liquidation is evidenced, at least, by the following key facts:

- On February 27, 2015, Grace sold substantially all of its assets to ARC (116 of 126 hotel assets), which occurred outside the regular course of Grace' business.[2]

---

[2] Grace will argue that because the Amended and Restated Charter defines a liquidation as not including a "sale of substantially all assets," that the sale to ARC does not constitute an event of liquidation. Under Tennessee law, this provision is statutorily void. *See* Tenn. Code Ann. § 48-

- Grace is in the process of selling the remaining 10 hotels, which were originally part of the ARC transaction;[3]

- The proceeds of the ARC sale have been used to settle Grace's debts with its lenders and creditors;[4]

- Since announcing the ARC transaction in 2014, Grace has not pursued any new business;[5]

- Grace does not maintain any employees or operate any business other than its ownership (or former ownership) of the 126 hotels, and once sold Grace will cease to operate as a business;[6] and

- Grace apportioned its profits and losses by selling its assets, in part, to repay lenders and other creditors.

Because Grace is winding up its affairs, the Preferred Shareholders are entitled to receive the Liquidation Preference. Under Grace's Amended and Restated Charter, the Preferred Shareholders are entitled to recover a Liquidation Preference of approximately $25 per share plus accrued, but unpaid dividends, for a total of $40 per share. This far exceeds the $26 per share provided in the Settlement. *See* Ex. B at § 5(b)(4)(A).

---

22-102. Even if it were enforceable, the *Quadrangle* case analyzed this precise issue in determining that even though a company may so limit the definition of "liquidation" that when other factors are present, such as the sale of remaining assets and use of such proceeds to settle with debtors and creditors, a liquidation may still have occurred so as to trigger a contractual liquidation preference. *Id.* Here, just as in *Quadrangle*, the Amended and Restated Charter's definition of "liquidation" does not preclude a finding of a liquidation, as the facts demonstrate that Grace did not *just* sell substantially all of its assets, it has also taken other steps identified by *Quadrangle* that are indicative of a corporate liquidation.

[3] *See* Grace's 10-K for the year ending December 31, 2013, at pp. 11 & 14, a true and correct copy of which is attached as Exhibit C and incorporated herein for all purposes.

[4] *Id.* at p. 38 ("As a result of the sale of the Portfolio and the associated defeasing and repayment of debt, we no longer have any variable rate debt outstanding).

[5] *Id.* at p. 28 (Grace "no longer operates any assets").

[6] *Id.* at p. 41 (Grace does "not currently have any employees and do[es] not expect to have any employees.").

Moreover, as a liquidation, the ARC transaction required a majority vote of the shareholders, which was not obtained. Specifically, under Section 48-23-102 of the Tennessee Code, a sale of all or substantially all company assets other than in the usual and regular course of business required a majority vote of shareholders before entering into such a transaction. Grace did not obtain such a vote prior to entering or finalizing the sale of 116 of its 126 hotels to ARC and undertaking other liquidating activity.

**2. The releases are unreasonably broad.**

Under the Settlement, in exchange for nominal monetary relief, class members and possibly even non-class members would broadly release all claims against Grace, its directors, and related Goldman affiliates. Indeed the Settlement defines the "Releasing Plaintiffs" to include ". . . any other Person who has the right, ability, standing or capacity to assert, prosecute or maintain any of the Releasing Claims." *See* Stipulation of Settlement at p. 17. Such release language goes beyond a private contractual agreement between Defendants and the class members. This release seeks to prejudice non-settling parties, including, at the moment, Settlors.

To approve this overly broad release would constitute plain legal prejudice of Settlors, and other non-settling parties' preexisting rights and potential legal claims. *See In re Integra Realty Res., Inc. (In re Integra I),* 262 F.3d 1089, 1102-03 (10th Cir. 2001) (holding that nonsettling parties have standing to complain when they can demonstrate they are "prejudiced" by a settlement, such as when it interferes with a party's contract rights or strips them of a legal claim or cause of action); *Mayfield v. Barr*, 985 F.2d 1090, 1093 (D.C. Cir. 1993) (clarifying that one may challenge a settlement agreement to which he is not a party if the agreement will cause him "plain legal prejudice" as when the "settlement strips the party of a legal claim or cause of action") (quoting *Agretti v. ANR Freight Sys.*, 982 F.2d 242, 247 (7th Cir. 1992). Considering

that Settlors, and likely other excluded class members, are afforded no relief in the Settlement, there is no justification for such a broad release.

Moreover, the Settlement contains unreasonably broad releases that should be removed before finalization. First, the Settlement states that a sale of Grace's assets does not constitute a liquidation under Grace's Amended and Restated Charter, which would mean that Grace would be relieved of its obligation to pay the Liquidation Preference to holders of Preferred Stock following the sale of substantially all of Grace's assets in the ARC transaction. Second, the statement that "Company [is] not obligated under the Charter to distribute proceeds of any sale of assets," would further their goal of depriving the Preferred Shareholders of their contractual Liquidation Preference. This is also referenced in the statement that "[i]f [the] merger is approved and consummated, Preferred Stock will be extinguished in exchange for the right to receive $26/share." These releases are overly broad and seek to strip the Preferred Shareholders of their contractually afforded $40 per share Liquidation Preference in a case brought to recover tort relief alone. This contractual sum would otherwise be available to Preferred Shareholders were it not for a number of self-dealing transactions Defendants orchestrated in an effort to siphon assets away from the Preferred Shareholders and into Defendants pockets.

## III. In the alternative, Settlors should not be carved out from the Seller Class.

Alternatively, the Notice of Hearing addressed to the Settlement's class members is deficient in that it specifically excludes Settlors from the Seller Class by excluding any person who sold their shares to PFD. This exclusion is unfair to those individuals, specifically, Settlors, and fails to present sufficient facts to enable members of the class to determine whether the amount of the proposed Settlement is fair and reasonable, as it purports to be. Settlors should not

be carved out of the Settlement's Seller Class, because Grace has not disclosed pertinent information regarding Settlors' sales of their Preferred Stock to PFD.

Indeed, even under the SPAs, Settlors should be considered part of the Seller Class, because the SPAs consider settlement of this Lawsuit a condition that triggers payment to Settlors. *See* Ex. A at ¶ 75. Despite the negotiated terms, PFD has denied payment under the SPAs and now seeks to exclude Settlors from payment as members of the Seller Class to further deny them of funds they are entitled to.

**CONCLUSION**

Wherefore, objectors, Settlors, pray that the proposed Settlement only be approved with modifications and amended prior to the hearing to the extent and in the particulars hereinabove set forth, and alternatively, in the event that the Settlement is approved, that the Court stay any distributions under the Settlement until a determination is made by the New York Court in the Settlors' Lawsuit. Settlors reserve the right to appear at the hearing to further state their objections.

Furthermore, counsel for Settlors state that they have not filed an objection to any other class action settlement within the prior five (5) years.

Respectfully submitted,

/s/ Shea Sisk Wellford
Shea Sisk Wellford (TN B.P.R. No. 16947)
sheawellford@martintate.com
**Martin, Tate, Morrow & Marston, P.C.**
International Place, Tower II
6410 Poplar Ave., Suite 1000
Memphis, TN 38119
Telephone: 901-522-9000
Telecopier: 901-527-3747

G. Michael Gruber (Texas State Bar No. 08555400)
mgruber@ghetrial.com
Michael J. Lang (Texas State Bar No. 24036944)
mlang@ghetrial.com
Laura M. Fontaine (Texas State Bar No. 24065239)
lfontaine@ghetrial.com
Chelsea L. Hilliard (Texas State Bar No. 24068630)
chilliard@ghetrial.com
**Gruber Hurst Elrod Johansen Hail Shank LLP**
1445 Ross Avenue, Suite 2500
Dallas, Texas 75201
Telephone: 214-855-6800
Telecopier: 214-855-6808

**COUNSEL FOR SETTLORS**

## CERTIFICATE OF SERVICE

I hereby certify that on August 20, 2015, I served a true and accurate copy of the foregoing document on all counsel of record via filing of the same with the court's CM/ECF system and via hand delivery at the addresses provided below.

Nicholas E. Chimicles
Kimberly M. Donaldson Smith
Catherine Pratsinakis
Chimicles & Tikellis LLP
361 West Lancaster Avenue
Haverford, PA 19041
***Counsel for the Class Members***

Sharon L. Nelles
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004
***Counsel for the Defendants***

/s/ Shea Sisk Wellford